# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

PHYLLIS SCHULTZ,

        Plaintiff,

vs.

ABILITY INSURANCE COMPANY,
f/k/a MEDICO LIFE INSURANCE
COMPANY,
ABILITY RESOURCES, INC.,
ABILITY REINSURANCE LIMITED,
A BERMUDA LIMITED COMPANY,
ABILITY REINSURANCE HOLDING
LIMITED, A BERMUDA LIMITED
COMPANY,
ABILITY RESOURCES HOLDINGS,
INC.,

        Defendants.

No. C11-1020

ORDER

---

## TABLE OF CONTENTS

I.    **INTRODUCTION** ........................................ 2

II.   **PROCEDURAL HISTORY** ............................... 2

III.  **MOTION TO AMEND COMPLAINT** ..................... 4
     A.   *Relevant Facts* ................................... 4
     B.   *Discussion* ...................................... 7
        1.   *Is There Good Cause for Failing to Comply with the Scheduling Order?* ............................. 7
        2.   *Would the Amendment Result in Unfair Prejudice to Defendants?* ............................... 10

IV.  **MOTION FOR JUDGMENT ON THE PLEADINGS** ....... 11
     A.   *Relevant Facts* .................................. 11
     B.   *Discussion* ..................................... 13

      1.     *Is There Personal Jurisdiction in the Northern District of Iowa?* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      2.     *Has Schultz Stated a Claim Upon Which Relief Can Be Granted?* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**V.    ORDER** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## I. INTRODUCTION

This matter comes before the Court on the Motion for Judgment on the Pleadings (docket number 35) filed by Defendants Ability Reinsurance (Bermuda) Limited, Ability Reinsurance Holdings Limited, Ability Resources, Inc., and Ability Resources Holdings, Inc. (collectively, the "non-contracting Defendants") on May 30, 2012; the Response (docket number 49) filed by the Plaintiff, Phyllis E. Schultz, on July 19; and the Reply (docket number 65) filed by the non-contracting Defendants on August 14.

Also before the Court is the Motion to Amend Complaint (docket number 37) filed by Schultz on June 18, 2012; the Resistance (docket number 44) filed by Defendant Ability Insurance Company ("Ability") on June 28; and the Reply (docket number 46) filed by Schultz on July 2.

Pursuant to Local Rule 7.c, the motions will be decided without oral argument.

## II. PROCEDURAL HISTORY

This case was initiated with the filing of a complaint on June 21, 2011. Plaintiff Phyllis Schultz sued Ability Insurance Company following its denial of Schultz's claim for benefits allegedly owed pursuant to a long-term care insurance policy issued by Ability. Schultz claimed breach of contract, bad faith, and fraudulent misrepresentation. Schultz asked for both compensatory and punitive damages. Ability answered on August 29, 2011, admitting the issuance of a policy, but denying Schultz's right to recover under the terms of the policy. The answer also asserts certain affirmative defenses.

On October 20, 2011, the Court adopted a Scheduling Order and Discovery Plan submitted by the parties. The parties agreed to various pretrial deadlines, including deadlines for completion of discovery and filing dispositive motions. In reliance on those deadlines, trial has been scheduled for January 14, 2013.[1]

On December 19, 2011, Schultz filed an amended complaint. The amended complaint added four additional "Ability" companies. For convenience, the Court will refer to the four additional Defendants as the "non-contracting Defendants."[2] After asserting that "[t]he defendants are an association of entities acting together for the purpose of providing long term care insurance under the name Ability Insurance and also act as the alter egos and/or agents of each other," Schultz repeated the claims made in her original complaint.[3] All five Defendants jointly filed an answer to the amended complaint on February 16, 2012.

On May 30, 2012, the non-contracting Defendants filed a Motion for Judgment on the Pleadings, which is now under consideration by the Court. On June 18, Schultz filed her initial response to the Defendants' motion, and filed a Motion to Amend Complaint, which is intended to address the "futility" argument raised by the non-contracting Defendants. The motion to amend complaint is also pending before the Court. On August

---

[1] Pursuant to an agreement of the parties, this case has been referred to the undersigned magistrate judge for the conduct of all further proceedings in accordance with 28 U.S.C. § 636(c).

[2] The non-contracting Defendants are identified as Ability Resources, Inc., Ability Reinsurance Limited, a Bermuda Limited Company, Ability Reinsurance Holding Limited, a Bermuda Limited Company, and Ability Resources Holdings, Inc. In their motion for judgment on the pleadings, however, the non-contracting Defendants state that "Ability Reinsurance Limited, a Bermuda Limited Company" is properly identified as Ability Reinsurance (Bermuda) Limited, and "Ability Reinsurance Holding Limited, a Bermuda Limited Company" is properly identified as Ability Reinsurance Holdings Limited.

[3] Amended Complaint (docket number 20) at 2, ¶ 6.

14 – the deadline for filing dispositive motions – Ability Insurance filed a Motion for Partial Summary Judgment.[4]

In addition to the dispositive motions described above, there are three motions pending relating to discovery. On July 19, 2012, Schultz filed a motion asking that Defendants be compelled to supplement their responses to Schultz's requests for production of documents. On August 10, Ability filed a motion to quash the deposition of an in-house attorney – Donald Lawler – and filed a Motion for a Protective Order, asking that various discovery documents be held confidential. All three motions are pending before the Court.[5]

A final pretrial conference is scheduled on December 21, 2012, and trial is set on January 14, 2013.

### III. MOTION TO AMEND COMPLAINT

#### A. Relevant Facts

This case was initiated on June 21, 2011, when Plaintiff Phyllis Schultz filed a complaint against Defendant Ability Insurance Company. Schultz claimed that Ability Insurance breached its contract to pay for long-term care services, violated an obligation "to engage in good faith and fair dealing," and was guilty of fraud and misrepresentation. Schultz asked for compensatory and punitive damages.

While Schultz's initial complaint identified only Ability Insurance as Defendant, it asserted that "Ability Resources, Inc., Ability Reinsurance Holdings Limited and Ability

---

[4] Ability Insurance asks in its motion that if the non-contracting Defendants are not dismissed pursuant to their motion for judgment on the pleadings, that they then be included in the motion for partial summary judgment.

[5] Also pending before the Court are two motions to strike filed by Ability Insurance, relating to its motion for partial summary judgment. *See* docket numbers 85 and 88.

Reinsurance Limited have their primary place of business outside the state of Iowa."[6] There is no other mention of those three companies elsewhere in the complaint. Throughout the complaint, however, Schultz refers to "Defendants" – plural. Ability Insurance filed an answer on August 29, 2011.

On October 20, 2011, the Court adopted a Scheduling Order and Discovery Plan submitted by Schultz and Ability Insurance. Among other things, the parties agreed to a November 28, 2011 deadline for adding parties and amending the pleadings. In reliance on the pretrial deadlines, a jury trial was scheduled on January 14, 2013. On November 28 – the deadline established in the Scheduling Order – Schultz filed a motion to add parties and amend the pleadings. The motion was granted.[7] The amended complaint was separately docketed on December 19, 2011.

The amended complaint adds four additional "Ability" companies as defendants – Ability Resources, Ability Reinsurance (Bermuda), Ability Reinsurance Holdings, and Ability Resources Holdings. The amended complaint asserts – and Defendants admit – that Ability Resources acquired Medico Life Insurance Company on September 28, 2007, including the policy issued to Schultz. The name of Medico was then changed to Ability Insurance. The amended complaint asserts that Ability Insurance purchases reinsurance from Ability Reinsurance (Bermuda). According to the amended complaint, "[t]he defendants are an association of entities acting together for the purpose of providing long term care insurance under the name Ability Insurance and also act as the alter egos and/or agents of each other."[8] The substantive allegations contained in the amended complaint otherwise remained unchanged.

_____

[6] Complaint (docket number 1) at 1, ¶ 3.

[7] The motion was initially denied without prejudice for failing to comply with Local Rule 7.1. Schultz filed a motion to reconsider, Ability Insurance did not file a resistance, and the Court then granted the motion for leave to amend.

[8] Amended Complaint (docket number 20) at 2, ¶ 6.

On May 30, 2012, Ability Reinsurance (Bermuda), Ability Reinsurance Holdings, Ability Resources, and Ability Resources Holdings (collectively, the "non-contracting Defendants") filed a motion for judgment on the pleadings. Schultz responded to the motion for judgment on the pleadings on June 18 and, contemporaneously, filed the instant motion to amend complaint. Schultz's proposed second amended complaint is attached to the motion. The first 46 paragraphs of the proposed second amended complaint appear to be identical to those found in the amended complaint.[9] However, the proposed second amended complaint then adds 58 paragraphs under the heading "Relationships Between the Defendants." The additional language purports to describe the relationship between the companies and asserts that the purpose of Ability Reinsurance Holdings, the parent company, "is to compartmentalize the assets and investments, and to isolate them from payment of U.S. taxes, regulatory oversight, or other public obligations in the United States."[10] Schultz asserts that Ability Reinsurance (Bermuda) is "a sham reinsurance operation," and Ability Resources is "another means of extracting profits and leaving expenses in the U.S. entities."[11] Similarly, Schultz claims that Ability Resources Holdings was organized "to further compartmentalize and evade legal obligations and public convenience."[12] Schultz asserts that the companies act "in concert" to improperly reduce claim payments.[13] According to Schultz, the non-contracting companies give "substantial assistance or encouragement" to Ability Insurance in conducting their

---

[9] The paragraphs are not numbered identically, however, because the amended complaint does not have a paragraph numbered "3".

[10] Proposed Second Amended Complaint (docket number 37-2) at 8, ¶ 50.

[11] *Id.*, ¶¶ 51-52.

[12] *Id.*, ¶ 53.

[13] *Id.*, ¶ 54.

operations and handling claims. The proposed second amended complaint provides detailed allegations regarding the interrelationship between the "Ability" entities.

## B. Discussion

Schultz asks that she be permitted to amend her complaint a second time, to add allegations regarding the "relationships between the Defendants." Except when amending her pleadings "as a matter of course," as defined in FEDERAL RULE OF CIVIL PROCEDURE 15(a)(1), a party may amend her pleadings "only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). Schultz is not entitled to amend her complaint "as a matter of course" and Defendants do not consent to Schultz's proposed amendment. Accordingly, Schultz seeks leave of the Court to amend her complaint.

Rule 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." The United States Supreme Court has made it clear that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). A party does not, however, have an absolute or automatic right to amend. *See U.S. ex rel. Lee v. Fairview Health System*, 413 F.3d 748, 749 (8th Cir. 2005). A denial of leave to amend may be justified "by undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557 (8th Cir. 2006). Here, Defendants argue Schultz has failed to show good cause to extend the pleadings deadline, the motion was unduly delayed, and that granting the motion would unfairly prejudice Defendants.

## 1. Is There Good Cause for Failing to Comply with the Scheduling Order?

The Court first turns to the question of whether Schultz has shown good cause for amending her pleadings after the deadline for doing so has expired. As set forth above, the deadline for amending the pleadings was November 28, 2011. In fact, Schultz amended her complaint and added the non-contracting Defendants on that date, without objection. On June 18, 2012, nearly seven months after the deadline for amending the pleadings, Schultz filed the instant motion to amend her complaint a second time.

Balanced against the liberal amendment policy of Rule 15(a) is the court's interest in enforcing its scheduling orders. Here, the Court established a November 28, 2011 deadline for motions to amend pleadings. Scheduling orders may be modified only for "good cause." FED. R. CIV. P. 16(b)(4). *See also* Local Rule 16.f ("The deadlines established by the Rule 16(b) and 26(f) scheduling order and discovery plan will be extended only upon written motion and a showing of good cause.").

"The interplay between Rule 15(a) and Rule 16(b) is settled in this circuit." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008). That is, notwithstanding the liberal amendment provisions found in the FEDERAL RULES OF CIVIL PROCEDURE, "[i]f a party files for leave to amend outside of the court's scheduling order, the party must show good cause to modify the schedule." *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 497 (8th Cir. 2008).

> Rule 16(b)'s good-cause standard governs when a party seeks leave to amend a pleading outside of the time period established by a scheduling order, not the more liberal standard of Rule 15(a).

*Sherman*, 532 F.3d at 716 (citing *Popoalii*). *See also In re Milk Products Antitrust Litigation*, 195 F.3d 430, 437-38 (8th Cir. 1999) ("If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure.") (quoting *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998)).

In this case, Schultz's motion for leave to amend comes 203 days after the deadline established for filing motions to amend the pleadings. Accordingly, the Court must determine whether Schultz has established "good cause" for failing to comply with the deadline. In her reply, Schultz asserts that "the documents upon which Plaintiff now relies were not available to Plaintiff in this case until they became public record at trial in *Hull*

*v. Ability Insurance, et al.*"[14] That case apparently "ended" on April 6, 2012 and, according to Schultz's reply, "[b]efore that, the documents were subject to a protective order."[15]

Schultz fails to explain, however, why in alleging the "relationships" between the "Ability" companies, or in describing the role the non-contracting Defendants may have played in denying her claim for benefits, it is necessary to "rely" on evidence introduced in another proceeding. Based on the stray allegation found in her initial complaint, Schultz was aware of the other "Ability" companies when she initially sued Ability Insurance. Furthermore, Schultz apparently had information regarding the relationships between the companies when she amended her complaint, alleging that they acted as "alter egos and/or agents of each other." Schultz's first set of requests for production of documents was not served, however, until April 23, 2012, nearly five months later.[16] Only after asking for copies of documents associated with the "South Dakota litigation" and the "Montana litigation" does Schultz seek documents regarding her claims and the various defenses. While information disclosed in the Montana litigation undoubtedly provided additional detail regarding the "relationships" between the "Ability" companies, most of this information could have been obtained by appropriate discovery in the instant action long before then. Schultz has failed to show good cause for amending her complaint nearly seven months after the deadline for doing so expired. Accordingly, the motion for leave to amend will be denied. *Popoalii*, 512 F.3d at 497 ("If a party files for leave to amend outside of the court's scheduling order, the party must show good cause to modify the schedule.").

---

[14] Schultz's Reply Brief (docket number 46) at 1 (referring to an action tried in the United States District Court for the District of Montana).

[15] *Id.* at 1-2.

[16] *See* Plaintiff's First Set of Request for Production of Documents to Defendants (docket number 46-3).

## 2. *Would the Amendment Result in Unfair Prejudice to Defendants?*

Apart from Schultz's failure to comply with the deadline established in the Scheduling Order, Defendants also assert the motion for leave to amend should be denied because of "undue delay" and "unfair prejudice." Regarding the question of whether the instant motion was unduly delayed, the argument is similar to that set forth above. Schultz identified three related "Ability" companies in her initial complaint, and named the four non-contracting Defendants in her amended complaint. Schultz did not move to amend her complaint to add specific allegations regarding the roles of the non-contracting Defendants, however, until they filed a motion for judgment on the pleadings. In an effort to shore up the apparent deficiency in the amended complaint, Schultz now asks to add detailed allegations regarding the relationships between Defendants.

Permitting a party to amend its pleadings in response to a dispositive motion filed by an opposing party is disfavored. *Sandcrest Outpatient Services, P.A. v. Cumberland County Hosp. System, Inc.*, 853 F.2d 1139, 1149 (4th Cir. 1988). Despite naming the non-contracting Defendants as parties on November 28, 2011, Schultz apparently did not serve a document request until April 23, 2012, and did not seek to include additional allegations regarding the relationships between Defendants until after the non-contracting Defendants filed a dispositive motion. Under these circumstances, the Court concludes the motion for leave to amend was "unduly delayed." *See also Moldea v. New York Times Co.*, 793 F. Supp. 338 (D.D.C. 1992) (citing *Wilderness Society v. Griles*, 824 F.2d 4, 19 (D.C. Cir. 1987).

To justify the denial of a motion to amend, however, "delay alone is insufficient." *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998). Prejudice must also be shown. *Id.* The Court concludes that permitting Schultz to further amend her complaint at this time would result in unfair prejudice to Defendants. Defendants' pretrial activity, including discovery – not to mention their motion for judgment on the pleadings – was presumably based on the allegations found in Schultz's amended complaint. Schultz

emphasizes that the proposed second amendment "doesn't add any claims."[17] But clearly the 58 additional paragraphs substantially change the allegations against the non-contracting Defendants, potentially requiring a change in strategy, additional discovery, and retention of expert witnesses. Schultz argues that Defendants cannot be surprised by the additional allegations found in the proposed second amended complaint and, therefore, there can be no prejudice. But a party to an action is entitled to prepare for trial based on what the other has pled, not what she *could* have pleaded. Schultz's motion for leave to file a second amended complaint was filed just two weeks prior to Defendants' deadline for disclosing expert witnesses, and the discovery deadline expired on August 15, 2012. In summary, even *if* Schultz established good cause for failing to comply with the deadline for amending pleadings found in the Scheduling Order, the Court concludes the motion to amend should be denied as a result of undue delay and unfair prejudice to Defendants.

## IV. MOTION FOR JUDGMENT ON THE PLEADINGS

On May 30, 2012, the non-contracting Defendants filed the instant motion for judgment on the pleadings. Three of the non-contracting Defendants – Ability Reinsurance (Bermuda), Ability Reinsurance Holdings, and Ability Resources Holdings – argue that the Court lacks personal jurisdiction over them. All four non-contracting Defendants – including Ability Resources – argue alternatively that the amended complaint fails to state a claim upon which relief can be granted.

### A. Relevant Facts

Schultz purchased a long-term care insurance policy from Mutual Protective Insurance Company, effective June 1, 1999. Generally, the policy provides nursing facility benefits for an insured meeting the qualifications contained in the policy. Ability Insurance assumed the obligations under the policy effective August 14, 2009.

---

[17] Schultz's Memorandum in Support of Motion to Amend Complaint (docket number 37-1) at 4.

On June 21, 2011, Schultz sued Ability Insurance, claiming it breached its contract to pay for long-term care services, violated an obligation "to engage in good faith and fair dealing," and was guilty of fraud and misrepresentation. An amended complaint was docketed on December 19, 2011, adding four additional "Ability" companies. The gravamen of Schultz's complaint against the additional Defendants is contained in a single sentence:

> The defendants are an association of entities acting together for the purpose of providing long term care insurance under the name Ability Insurance and also act as the alter egos and/or agents of each other.

Amended Complaint (docket number 20) at 2, ¶ 6.

Michael A. Crow is president and CEO of Ability Reinsurance Holdings and Ability Reinsurance (Bermuda). Donald M. Charsky is president and CEO of Ability Resources Holdings. In affidavits filed in support of the instant motion for judgment on the pleadings, Crow and Charsky aver that the companies are "separate" from Ability Insurance and maintain separate corporate formalities.[18] According to the affidavits, all three companies maintain "books, records, and accounts" that are separate from each other. None of the three companies are registered to do business in Iowa, own any real or personal property in Iowa, or pay Iowa taxes. None of the companies have employees or offices in Iowa, nor have they appointed a registered agent for service of process in Iowa. Crow and Charsky assert that none of the three companies maintain an office or a bank account in Iowa, and have never conducted business in Iowa. Finally, the affidavits state that the three companies were "not involved in the marketing, sale, underwriting, or administration of any insurance policy issued to Phyllis Schultz or any other Iowa resident."

In her resistance, Schultz seems to concede that Ability Reinsurance (Bermuda), Ability Reinsurance Holdings, and Ability Resources Holdings do not have a presence in

---

[18] *See* docket number 35-2 at 19-27.

Iowa and were not directly involved in the assumption of Schultz's long-term care insurance policy. Schultz argues, however, that "Defendants are five corporate entities, all organized and controlled by the same individuals," and Ability Insurance is their "agent" or "alter ego."[19] That is, Schultz asserts that personal jurisdiction is conferred on the non-contracting Defendants due to their relationship with Ability Insurance.

Ability Reinsurance Holdings is the parent company of Ability Resources Holdings, which in turn owns Ability Insurance. Ability Reinsurance Holdings also owns Ability Reinsurance (Bermuda). Ability Insurance contracts with Ability Reinsurance (Bermuda) to reinsure its risk.

## B. Discussion

### 1. Is There Personal Jurisdiction in the Northern District of Iowa?

In determining the existence of personal jurisdiction, the Court applies the long-arm statute of the forum state and must determine whether the exercise of personal jurisdiction is consistent with due process. *Wells Dairy, Inc. v. Food Movers Intern., Inc.*, 607 F.3d 515, 518 (8th Cir. 2010). In Iowa, "[e]very corporation, individual, personal representative, partnership or association that shall have the necessary minimum contact with the state of Iowa shall be subject to the jurisdiction of the courts of this state . . . ." Iowa R. Civ. P. 1.306. This rule "expands Iowa's jurisdictional reach to the widest due process parameters allowed by the United States Constitution." *Addison Ins. Co. v. Knight, Hoppe, Kurnik & Knight*, 734 N.W.2d 473, 476 (Iowa 2007). Accordingly, the Court must determine whether the exercise of personal jurisdiction comports with due process. *Wells Dairy*, 607 F.3d at 518.

The Due Process Clause of the Fourteenth Amendment operates to limit the power of a State to assert *in personam* jurisdiction over a nonresident defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1984). The due process requirements are satisfied if a nonresident corporate defendant has "certain minimum

---

[19] Schultz's response (docket number 49) at 2.

contacts with the forum such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 414 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Eighth circuit Court of Appeals has established a five-part test for measuring a defendant's contacts with the forum state: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Wells Dairy*, 607 F.3d at 518 (quoting *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994)). "Personal jurisdiction may be established by general jurisdiction or specific jurisdiction, and the third factor – relation of the cause of action to the contacts – distinguishes between the two." *Id.*

Here, Ability Reinsurance (Bermuda), Ability Reinsurance Holdings, and Ability Resources Holdings do not have any direct contact with Iowa. Ability Reinsurance (Bermuda) and Ability Reinsurance Holdings are both Bermuda limited companies. Ability Resources Holdings is incorporated in the State of Delaware. They have no offices or employees in Iowa, nor do they conduct business in Iowa. Accordingly, they are not subject to "general jurisdiction" in Iowa. *Addison Ins. Co.*, 734 N.W.2d at 477 ("General jurisdiction requires the defendant's contacts with the forum state to be 'continuous and systematic.'"). Moreover, because these companies were not directly involved in marketing the policy to Schultz, the assumption of the policy by Ability Insurance, or the administration of Schultz's claim, they are not subject to "specific jurisdiction."[20] *Id.* ("Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state . . . ."). Accordingly, *if* jurisdiction can be asserted against these three companies, it must be because Ability Insurance acted as their "alter ego" or as their "agent."

---

[20] Ability Resources handles Ability Insurance's claims. Ability Resources does *not* claim that it is not subject to jurisdiction in Iowa.

A general principle of corporate law, which is "deeply ingrained in our economic and legal systems," is that a parent corporation is not liable for the acts of its subsidiaries. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). That is, the mere existence of a parent-subsidiary relationship between two corporations does not make one liable for the acts of the other. *Id.* It is an "equally fundamental principle of corporate law," however, that the corporate veil may be pierced, and the parent corporation held liable for the acts of the subsidiary, if "the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud" on the parent's behalf. *Id.* at 62.

Establishing personal jurisdiction over a foreign corporation is "interrelated" to the doctrine of "piercing the corporate veil." *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Management, Inc.*, 519 F.2d 634, 637 (8th Cir. 1975). A foreign parent corporation cannot be hauled into court "merely by the presence of its wholly owned subsidiary." *Id.* "However, the fiction of corporate entity may be disregarded, where one corporation is so organized and controlled and its affairs are so conducted that it is, in fact, a mere instrumentality or adjunct of another corporation." *Id.* That is, if one of the non-contracting companies acted as Ability Insurance's "alter ego," or if Ability Insurance acted as an "agent" for one of the non-contracting companies, then personal jurisdiction may be established. The Court in *Lakota Girl Scout* noted, however, that "piercing the corporate veil, if only to establish jurisdiction over parent corporation, is a drastic approach authorized only in the most extreme situations." *Id.* (citing with approval *Karlin v. Avis*, 326 F. Supp. 1325 (E.D.N.Y. 1971)). *See also Briggs Transp. Co., Inc. v. Starr Sale Co., Inc.*, 262 N.W.2d 805, 810 (Iowa 1978) ("the corporate veil may be pierced under exceptional circumstances").

To survive a motion challenging personal jurisdiction, the plaintiff must make a "prima facie showing" that the defendant is subject to jurisdiction in the forum state. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004). The plaintiff has the burden of proving in personam jurisdiction, and the burden does not shift to the

defendant. *Epps v. Stewart Information Services, Corp.*, 327 F.3d 642, 647 (8th Cir. 2003). Accordingly, Schultz has the burden of making a prima facie showing that the non-contracting Defendants and Ability Insurance were alter egos, or that Ability Insurance acted as their agent. In determining whether Schultz has met her burden of proof, the Court will view the evidence in the light most favorable to her and resolve any factual conflicts in her favor. *Romak USA, Inc. v. Rich*, 384 F.3d 979, 983 (8th Cir. 2004). In addition to the pleadings, the Court may consider affidavits and exhibits presented by the parties. *Epps*, 380 F.3d at 1072.

In attempting to meet her burden of proof, Schultz points to the relationships between Ability Insurance and the non-contracting Defendants. A detailed description of the relationships is set forth in Ability Insurance's Annual Statement for the year ending December 31, 2011.[21] The Medico Life Insurance Company was purchased by Ability Resources in 2007. In 2009, Medico Life Insurance Company changed its name to Ability Insurance. A corporate restructuring occurred in 2010, including an "administrative services" contract between Ability Resources and Ability Insurance, and various reinsurance contracts between Ability Reinsurance (Bermuda) and Ability Insurance. On December 8, 2010, Ability Resources "transferred ownership of [Ability Insurance] via dividend to Ability Resources Holdings, Inc., a new entity which also wholly owns [Ability Resources]." Apparently, Ability Insurance now has no employees, and its administrative duties – including claims management – are handled by employees of Ability Resources.[22]

---

[21] Schultz's Response, Exhibit 9 (docket number 49-11).

[22] The annual statement indicates that Ability Insurance's employees were transferred to Ability Resources Holdings. In their reply, the movants state that the annual statement is in error. Ability Insurance's employees "were actually transferred to Ability Resources, Inc." Reply Brief (docket number 65) at 9 n.8.

Ability Insurance is the company that issues the policies and contracts with the policyholders. Ability Insurance then buys reinsurance from Ability Reinsurance (Bermuda). In fact, 74.9% of its risk is reinsured with Ability Reinsurance (Bermuda).[23] Schultz questions the wisdom of permitting an insurance company to purchase reinsurance from a related company and argues "[t]he reinsurance company in Bermuda is a sham."[24] Schultz asserts that the organizational chart for the "Ability Team" "disregards all corporate boundaries." For example, Don Charsky, CEO of Ability Resources Holdings, has supervisory authority over Michael A. Crow, CEO of Ability Reinsurance Holdings (which is Ability Resources Holdings' parent company) and Ability Reinsurance (Bermuda).[25]

A corporation's existence is presumed to be separate, but its corporate veil may be pierced if "(1) the corporation is undercapitalized, (2) without separate books, (3) its finances are not kept separate from individual finances, individual obligations are paid by the corporation, (4) the corporation is used to promote fraud or illegality, (5) corporate formalities are not followed or (6) the corporation is merely a sham." *Lakota Girl Scout*, 519 F.2d at 638. *See also Cemen Tech, Inc. v. Three D Industries, L.L.C.*, 753 N.W.2d 1, 6 (Iowa 2008).

Schultz does not refer specifically to the factors set forth in *Lakota Girl Scout*; rather, she argues that all of the Ability companies are dominated by Donald Charsky, a substantial amount of Ability Insurance's premiums are funneled to Ability Reinsurance (Bermuda), and Ability Insurance's expenses are paid by Ability Resources. Schultz also notes common membership on the boards of directors of the various companies. The board of directors of Ability Reinsurance Holdings shares many common members with

---

[23] Apparently, if 75% were reinsured – rather than 74.9% – it would trigger additional regulatory oversight in California.

[24] Schultz's Response (docket number 49) at 7.

[25] *See* Schultz's Response, Exhibit 14 (docket number 49-16).

the board of directors of Ability Reinsurance (Bermuda). It should be noted, however, that the board of directors for Ability Insurance does *not* share any members with those two companies.[26] In any event, common management alone does not justify piercing the corporate veil. *Team Central, Inc. v. Teamco, Inc.*, 271 N.W.2d 914, 923 (Iowa 1979) ("[M]ere identity of stock ownership and corporate management is not alone sufficient to permit a piercing of the corporate veil."). *See also Bestfoods*, 524 U.S. at 62. Simply belonging to the "same family of corporations" is "patently insufficient" to establish common liability under a veil-piercing theory. *Noonan v. Winston Co.*, 135 F.3d 85, 94 (1st Cir. 1998).

The Court concludes that Schultz has not made a prima facie showing that Ability Insurance is the "alter ego" of Ability Reinsurance Holdings, or acted as its agent. Even viewing the evidence in the light most favorable to Schultz, she has failed to make a prima facie showing that Ability Insurance was undercapitalized, operates without separate books, fails to keep its finances separate, was used to promote fraud or illegality, its corporate formalities were not followed, or it is merely a sham. I reach the same conclusion regarding Ability Insurance's direct parent, Ability Resources Holdings. The mere fact that Ability Reinsurance Holdings owns Ability Resources Holdings, which in turn owns Ability Insurance, does not establish jurisdiction in Iowa against the parent companies. *Lakota Girl Scout*, 519 F.2d at 637.

Similarly, I do not believe a prima facie showing has been made that Ability Reinsurance (Bermuda) is Ability Insurance's alter ego, or that Ability Insurance acted as its agent. While one can question the wisdom of regulators permitting Ability Insurance to purchase reinsurance from a member of the same corporate family, it does not render the contractual relationship a "sham" or otherwise make Ability Reinsurance (Bermuda)

---

[26] The Court has been unable to find any document identifying the members of the board of directors for Ability Resources Holdings.

susceptible to suit in Iowa. Again, Schultz has failed to make a prima facie showing of those factors generally associated with piercing the corporate veil.

In summary, the Court concludes that because Ability Reinsurance Holdings, Ability Reinsurance (Bermuda), and Ability Resources Holdings have no contact with the state of Iowa and no contractual relationship with Schultz, they are not subject to general or specific jurisdiction in this state in their own right. Furthermore, the Court concludes that Schultz has not made a prima facie showing that those three companies act as an alter ego for Ability Insurance, or that Ability Insurance acts as their agent. Accordingly, jurisdiction cannot be established on that basis. Therefore, the motion for judgment on the pleadings filed by Ability Reinsurance Holdings, Ability Reinsurance (Bermuda), and Ability Resources Holdings will be granted for lack of personal jurisdiction against them in this district.

### 2.    *Has Schultz Stated a Claim Upon Which Relief Can Be Granted?*

Ability Resources – the remaining "non-contracting Defendant" – concedes that it is subject to personal jurisdiction in Iowa. It also asks that it be dismissed, however, arguing that Schultz's complaint fails to state a cause of action against it.

In her amended complaint, Schultz alleges – and Defendants admit – that Ability Resources acquired Medico Life Insurance Company on September 28, 2007, together with a group of insurance policies which included Schultz's policy. Defendants also admit that the name of Medico Life Insurance Company was then changed to Ability Insurance Company. The amended complaint makes no other specific reference to Ability Resources. Schultz asserts, however, that "[t]he defendants are an association of entities acting together for the purpose of providing long term care insurance under the name Ability Insurance and also act as the alter egos and/or agents of each other."[27]

A pleading that states a claim for relief must contain "a short and plain statement of the claim" showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a)(2). It does

---

[27] Amended Complaint (docket number 20) at 2, ¶ 6.

not require detailed factual allegations, but it must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading that offers "labels and conclusions" or "'naked assertions' devoid of 'further factual enhancement'" will not do. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). In addition, to survive a motion to dismiss, a complaint must contain sufficient factual matter to show relief is "plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (emphasis added).

Here, Ability Resources has filed a motion for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). In considering whether the motion should be granted, the Court applies the same standard used to address a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Ashley County, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). The Court must accept as true all factual allegations set out in the complaint, and construe the complaint in the light most favorable to Schultz. *Id.* It must be noted, however, that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Schultz alleges in her amended complaint that Ability Insurance and the other Defendants "act as the alter egos and/or agents of each other." The amended complaint makes no effort, however, to assert any facts which support this conclusory allegation. Conclusory statements alone "do not suffice." *Id.*; *See also U.S. ex rel. Raynor v. National Rural Utilities Co-op. Finance, Corp.*, 690 F.3d 951, 955 (8th Cir. 2012).

The Court concludes that simply alleging that Ability Resources is the alter ego of Ability Insurance, without more, fails to satisfy the pleading requirements of *Iqbal* and *Twombly*. *See, e.g., Union Ins. Co. v. Hull & Co., Inc.*, 831 F. Supp. 2d 1060, 1066 (S.D. Iowa 2011); *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 789 (N.D. Tex. 2008); *Brennan v. Concord EFS, Inc.*, 369 F. Supp. 2d 1127, 1136 (N.D. Cal.

2005); *Omni-Wave Electronics Corp. v. Marshall Industries*, 127 F.R.D. 644, 648 (D. Mass. 1989). *Compare Meganallez v. Hilltop Lending Corp.*, 505 F. Supp. 2d 594, 607 (N.D. Cal. 2007) (finding a sufficient factual basis to support a theory of alter ego liability, where the complaint alleged the defendant was inadequately capitalized, failed to maintain corporate formalities, was designed to limit the liability of the alter ego, there was a unity of interest and ownership such that the individuality and separateness of the defendants had ceased to exist, and adherence to the corporate formalities would sanction fraud and promote injustice).

Schultz's reliance on *Hamilton v. Palm*, 621 F.3d 816 (8th Cir. 2010), is unavailing. There, the plaintiff sued his employer after being seriously injured at work. The defendant filed a motion to dismiss, arguing the plaintiff had not adequately pleaded a master-servant relationship. The district court agreed and dismissed the complaint. The Eighth Circuit Court of Appeals reversed. The plaintiff alleged that he was "employed" by the defendant, that they "hired him to perform," and that he performed the work "as directed by the defendant." While acknowledging that the allegations were "far from comprehensive or conclusive," the court concluded that the "allegations were sufficient to raise a plausible inference that Hamilton was the Palms' employee." *Id.* at 819. Here, the amended complaint contains no factual assertions to support Schultz's conclusory allegation that "the Defendants," including Ability Resources, acted as alter egos or agents of each other. Therefore, the motion for judgment on the pleadings filed by Ability Resources will be granted as a consequence of Schultz failing to adequately plead a claim upon which relief can be granted.

## V.  ORDER

IT IS THEREFORE ORDERED as follows:

1.     The Motion to Amend Complaint (docket number 37) filed by the Plaintiff on June 18, 2012 is **DENIED**.

2.     The Motion for Judgment on the Pleadings (docket number 35) filed by the non-contracting Defendants on May 30, 2012 is **GRANTED**.  Defendants Ability Reinsurance (Bermuda) Limited, Ability Reinsurance Holdings Limited, Ability Resources, Inc., and Ability Resources Holdings, Inc. are hereby **DISMISSED**.  Only Ability Insurance Company remains as a Defendant in this action.

DATED this ___9th___ day of October, 2012.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA